UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 20-10266-RGS

UNITED STATES OF AMERICA

v.

CHENGUANG GONG and
YALAN TANG

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

September 23, 2024

STEARNS, D.J.

Defendants Chenguang Gong, and Yalan Tang, seek to suppress statements they made during interviews conducted at the dining room table of their home in Belmont, Massachusetts, on November 10, 2020, after being arrested by agents of the Food and Drug Administration. Gong and Tang, who are Chinese nationals and longtime residents of the United States, are charged with Conspiracy (in violation of 18 U.S.C. § 371) and Introduction of Misbranded Drugs with Intent to Defraud and Aiding and Abetting (in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), 18 U.S.C. § 2). After their case was transferred to this session on November 11, 2023, the court heard arguments on this and related motions on February 15, 2024.[1]

---

[1] It was the court's understanding that the defendants did not wish to testify at an evidentiary hearing and chose instead to rely on their affidavits and the tape recordings of the interrogations.

Based on the pleadings and exhibits offered into evidence, including videotapes of the contested interviews (since reviewed by the court), I find the following material facts.

1. Mr. Gong and Ms. Tang emigrated from China to the United States in 2006. Gong is a Ph.D. graduate in molecular biology from the University of Rochester in New York. Ms. Tang holds a bachelor's degree equivalent in pharmaceutical engineering from China's Nanjin University. Both defendants have held high-level jobs in the United States as research scientists. Their roots are firmly planted in the United States. They own their Belmont home and at least one other investment property in the Boston area and are raising their two children as American citizens.

2. On November 5, 2020, Magistrate David Hennessy issued warrants for the arrest of the couple. Magistrate Judge Page Kelley authorized a search warrant for the couple's Belmont home on November 9, 2020. The warrants were executed on the morning of November 10, 2020. Agents knocked, identified themselves, and conducted a sweep of the premises, locating the defendants, Ms. Tang's parents, and the couple's two minor children (one an infant). The agents made no attempt to isolate the defendants from other members of the household except during their separate interviews. At one point, agents honored Ms. Tang's request to return to her bedroom to pump breastmilk for her infant child and, on another occasion, to speak privately with her husband.

3. It is undisputed that Mr. Gong and Ms. Tang were informed immediately that they were under arrest and that the ensuing interrogations were custodial. It is also beyond dispute that each agreed to sit for individual interviews and that each interview was prefaced with a recitation of the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).[2] And finally, it is undisputed that each defendant made incriminating statements during their interrogations, which were contemporaneously recorded on videotape.[3]

## DEFENDANTS' ARGUMENTS FOR SUPPRESSION

Defendants portray themselves as hapless Chinese nationals "with no meaningful prior experience with United States law enforcement personnel," Mot. at 1 (Dkt # 56), who were duped into waiving their right to remain silent by a perfunctory rendering of their *Miranda* rights. They further maintain that despite having spent most of their adult years in the United States, they had never shed their upbringing in China "where citizens are indoctrinated to cooperate with police officers and answer their questions or otherwise risk

---

[2] I credit the government's representation that Agent Hughes apprised Mr. Gong of the *Miranda* rights before beginning the recorded interview (as Mr. Gong plainly acknowledges at the beginning of the taping). *See* Dkt # 67-1 ¶¶ 24-27.

[3] As the government notes, Mr. Gong did not answer questions blindly but attempted at times to minimize his liability while offering exonerations of his wife. Opp'n at 6-7 (Dkt # 67).

facing harsher consequences." Mot. at 2. Finally, they claim that their imperfect understanding of the English language impeded their ability to make a knowing choice to waive their *Miranda* rights. *Id.*

## RULINGS OF LAW

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." While "admissions of guilt by wrongdoers, if not coerced, are inherently desirable," *United States v. Washington,* 431 U.S. 181, 187 (1977), the Supreme Court in *Miranda v. Arizona, supra*, "presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically informed of his *Miranda* rights and freely decides to forgo those rights." *New York v. Quarles,* 467 U.S. 649, 654 (1984). The warnings familiarly known as the "*Miranda* rights," while not constitutionally compelled, have a "constitutional underpinning." *Dickerson v. United States*, 530 U.S. 428, 440 n.5, 444 (2000).

The voluntariness of a confession and the validity of a waiver (issues which must be considered separately) are decided "in light of the totality of the circumstances." *Procunier v. Atchley*, 400 U.S. 446, 453 (1971) (voluntariness); *North Carolina v. Butler*, 441 U.S. 369, 374-375 (1979)

(waiver). A confession is admissible only if it is "voluntary," that is, if is "the product of an essentially free and unconstrained choice by its maker," *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961); and is "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960).

In applying the totality of the circumstances test, courts consider the environment in which the interrogation took place and the personal characteristics of the accused. The more familiar or neutral the setting of the interview, particularly one that occurs in a defendant's home or place of employment, the less likely it will be deemed to have a coercive overtone. *See Beckwith v. United States*, 425 U.S. 341, 347 (1976) (suspect's home); *United States v. Dockery*, 736 F.2d 1232, 1234 (8th Cir. 1984) (*en banc*) (suspect's place of employment); *United States v. Bassignani*, 560 F.3d 989, 996 (9th Cir. 2009) (conference room at defendant's workplace), *amended and superseded by* 575 F.3d 879 (9th Cir. 2009); *cf. Minnesota v. Murphy*, 465 U.S. 420, 433 (1984) (probation office).

Individual characteristics of the accused that warrant consideration include the "conduct of the defendant, the defendant's age, education, intelligence, and emotional stability, [his or her] experience with and in the criminal justice system, [his or her] physical and mental condition, . . . and

5

the details of the interrogation, including the recitation of *Miranda* warnings." *Commonwealth v. Selby*, 420 Mass. 656, 663 (1995). *Cf. Lynumn v. Illinois*, 372 U.S. 528 (1963); *Reck v. Pate*, 367 U.S. 433, 441 (1961). While a defendant's facility in English or the language of interrogation is also considered, *see Commonwealth v. Garcia*, 379 Mass. 422, 427-430 (1980), lack of familiarity with the American justice system does not invalidate a waiver. *See State v. Leuthavone*, 640 A.2d 515, 520 (R.I. 1994) (Laotian suspect's failure to appreciate the tactical advantages of remaining silent and obtaining counsel did not impact on his ability to comprehend the *Miranda* warnings); *Commonwealth v. Sarourt Nom*, 426 Mass. 152, 159 (1997) (defendant's claim not to understand English was belied by his educational level and his assurances to police that he understood his rights).[4] In evaluating a defendant's comprehension of the English language, a court will give weight to the length of his or her residence in the United States (here

---

[4] The case on which defendants rely, *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998), is not apt. There is no indication during the taped interviews that either defendant failed to grasp the gravity of the situation, failed to comprehend their rights, or needed the assistance of a translator. By contrast with these defendants, who are highly educated and have spent years in the United States working in sophisticated English language environments, the youthful defendant in *Garibay*, while he had two years of high school in the United States had failed his English language classes and was found be borderline intellectually disabled with a low IQ and poor English-verbal comprehension. *Id.* at 537-539.

fourteen years for both Mr. Gong and Ms. Tang at the time of their interviews). *See United States v. Lee*, 317 F.3d 26, 33 (1st Cir. 2003).

## CONCLUSIONS OF FACT AND LAW

The court has viewed the videotape of the defendants' interrogations. Contrary to defendants' claims, I do not find that either defendant lacked the proficiency in English to comprehend and respond to the interrogator's (Agent Hughes) clearly framed questions. While Mr. Gong is not bilingual in English, his answers were direct and grammatically (if not always syntactically) composed. Ms. Tang, although not educated in the United States, speaks with a near-fluent English. Moreover, I see nothing in the questioning to suggest overbearing or duplicity or any attempt to diminish the consequences of the potential charges that the couple faced.[5] The interrogations were not rushed (that of Mr. Gong lasted nearly two hours, and that of Ms. Tang somewhat longer than an hour (and would have ended sooner has Ms. Tang accepted Agent Hughes's offer to terminate the questioning earlier). Agent Hughes's demeanor throughout was business-like, polite, and measured in tone. While defendants complain that Agent

---

[5] As Ms. Tang admits, when during the breastfeeding interval, she asked the accompanying female agent if she was going to jail, the agent answered that yes, it was possible. Mot. at 8-9.

Hughes explained the *Miranda* rights orally without providing them a written version, there is no requirement in the law that a defendant receive the warnings both orally and in writing. *See United States v. Sledge*, 546 F.2d 1120, 1121 (4th Cir. 1977); *Commonwealth v. Smith*, 426 Mass. 76, 81 (1997).

## ORDER

For the foregoing reasons, the defendants' motion to suppress their statements is DENIED.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE